IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 07-25-JJF |
| ROBERT COTTMAN, | : | |
| Defendant. | : | |

**DEFENDANT'S AMENDED MOTION TO SUPPRESS
PHYSICAL EVIDENCE AND STATEMENTS**

Defendant, Robert Cottman, by and through his undersigned counsel, Edson A. Bostic, hereby moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fourth and Fifth Amendments of the United States Constitution, for an Order suppressing the Government's use of any and all evidence illegally seized by law enforcement officials on or about February 18, 2007, including all statements made subsequent to the illegal search.

In support of this motion, Mr. Cottman avers as follows:[1]

1. On February 17, 2007, Wilmington Police Department officers were patrolling in the area of 4th and Clayton Streets. While at this intersection, officers observed a vehicle that was driven by a case informant known to the officers. The officers believed that this individual had a suspended or

---

[1] The facts contained in paragraphs 1-6 of this motion were taken from the discovery. Although Mr. Cottman cites these facts in his motion, he does not concede that the events transpired as stated by the arresting officers. Mr. Cottman submits that an evidentiary hearing is needed to further develop the facts, which are determinative of this motion.

revoked driver's license.[2] The officers conducted a traffic stop of the vehicle.

    2. After approaching the vehicle, officers observed Mr. Cottman sitting in the passenger seat. Specifically, Officer Dupont asked Mr. Cottman for his identification. Mr. Cottman stated that he did not have his identification, and that his name was "Bryan Cottman." As Officer Dupont checked this name through the DELJIS system, he observed Mr. Cottman reach inside of his right back pocket and retrieve his wallet. Mr. Cottman allegedly removed his identification from his wallet and attempted to conceal it under his right leg.

    3. Officer Dupont demanded that Mr. Cottman turn over the identification card, and contemporaneously reached into the vehicle and grabbed the card from Mr. Cottman. After examining the card, Officer Dupont discovered that Mr. Cottman's name was not "Bryan," but rather, "Robert V. Cottman, III." Officer Dupont conducted a DELJIS inquiry and discovered that Mr. Cottman, who was on probation for a prior felony conviction, was wanted for violation of probation and two family court capiases. Mr. Cottman was removed from the vehicle and taken into custody. Officer Dupont contacted Mr. Cottman's probation supervisor to authorize an administrative search.

    4. On February 18, 2007, the Delaware State Probation and Parole officers, along with members of the Wilmington Police Department, conducted an administrative search at Mr. Cottman's address of record. When officers arrived at the residence, they contacted Beverly Cottman, Mr. Cottman's mother. Mr. Cottman and his mother sat in the living room while the officers conducted

---

[2] Mr. Cottman is unable to aver to the officers' knowledge of the driver's identity or license status. The government has informed the defense that it may be willing to produce the driver's name to assist Mr. Cottman in determining the nature of the officers' knowledge. However, the government apparently does not intend to produce any more information in its custody and control regarding this individual.

the search.

5. During the search, Delaware State Probation officers found three boxes of ammunition in Mr. Cottman's bedroom, and a Delaware Family Court Civil Notice. According to officers, Mr. Cottman stated that he had found the ammunition outside of his house and brought it in "to get them away from my house."

6. Officers also found a firearm under Ms. Cottman's bed, and a firearm inside of a gym bag in a first floor storage room. The gym bag also contained empty plastic baggies bearing various logos. The officers asked Ms. Cottman about the firearm, and Mr. Cottman allegedly responded that he found the gun outside and put it in his mother's room for protection. After Mr. Cottman overheard the officers locate the second gun, he allegedly stated to his mother, "they got the bag." Mr. Cottman also allegedly stated that he found the second gun in an alley. The officers prepared a Criminal Complaint for Mr. Cottman, and took him to police headquarters.

7. On February 27, 2007, Mr. Cottman was indicted for being a felon in possession of a loaded firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1) and 924 (a) (2).

**A. The Search and Seizure of Mr. Cottman Violated The Fourth Amendment.**

8. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." See U.S. CONST. Amend. IV. As the Supreme Court has noted, "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority

of law." Terry v. Ohio, 392 U.S. 1, 9 (1968) (citing Union Pacific R.R. Co. v. Botsford, 141 U.S. 250, 251 (1891)). The Fourth Amendment permits officers to conduct a brief, investigatory stop if the officer has reasonable suspicion that "criminal activity may be afoot." Terry, 392 U.S. at 30. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief and limited purpose, constitutes a 'seizure of persons' within the meaning of this provision." Whren v. United States, 517 U.S. 806, 809 (1996). In "justyfing the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with reasonable inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21.

9. Based upon information and belief, the police officers lacked reasonable suspicion to initiate the traffic stop of the case informant's vehicle. To date, Mr. Cottman has not received any information to support the officers' asserted grounds for the traffic stop. Although the police report asserts the officers' knowledge that the driver had a revoked/suspended license, and that they ran a DELJIS check based on this information, Mr. Cottman has not received any documented traffic citations or a printout of the DELJIS inquiry.

10. Additionally, all the police reports are redacted of any information concerning the driver's identification or license status. As such, Mr. Cottman must challenge the traffic stop as unsupported by the necessary reasonable suspicion. See United States v. Sharpe, 470 U.S. 675, 682 (1985) ("The authority and limits of the [Fourth] Amendment apply to investigative stops of vehicles. . . .").

11. Even if the officers were able to articulate facts sufficient to warrant the traffic stop, no facts support a reasonable suspicion that Mr. Cottman was presently involved in criminal activity. Courts have recognized that "even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions [or] ask for identification." United States v. Lockett,

406 F.3d 207 (3d Cir. 2005) (citing Florida v. Bostick, 501 U.S. 429 (1991)). The right to unsupported inquiry, however, is limited by the consensual nature of the encounter, and an individual is free to end such an encounter or not respond. Bostick, 501 U.S. at 434-35.

12. In this case, Mr. Cottman was under no obligation to provide the police officer with his identification, despite his request. Furthermore, Mr. Cottman did not consent to Officer Dupont's seizure of his identification card, which was not supported by reasonable suspicion or probable cause. This seizure violates Mr. Cottman's Fourth Amendment rights, and any evidence derived from the search and seizure should be suppressed as "fruit of the poisonous tree." See Wong-Sun v. United States, 371 U.S. 471 (1963).

**B. The Administrative Search of Mr. Cottman's Home Violated His Fourth Amendment Rights Because It Was Not Supported by Reasonable Suspicion.**

13. The discovery of Mr. Cottman's true identity and parole violations, which were used to justify the subsequent administrative search, directly resulted from Officer Dupont's illegal search and seizure of Mr. Cottman. Thus, the discovery of these violations, and any evidence obtained as a result, should be suppressed pursuant to Wong Sun. Moreover, Mr. Cottman asserts that, regardless of the legality of the initial seizure, the officers lacked reasonable suspicion to conduct the administrative search of his home.

14. "A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'" Griffin v. Wisconsin, 483 U.S. 868, 873 (1987) (citation omitted). Although searches must generally be conducted pursuant to a warrant, the Supreme Court has permitted exceptions "when special needs, beyond the normal need for law enforcement, make the warrant and probable cause impracticable." Id. (citing New Jersey v. T.L.O., 469 U.S. 325, 351

(1985)).

15. A State's operation of a probation system meets the "special needs requirement," and probationers have "conditional liberty properly dependent on observance of special [probation restrictions]." Griffin, 482 U.S. at 873-74. Accordingly, "probation officers may search a probationer's residence based on a reasonable suspicion that the probationer is engaged in criminal activity therein." United States v. Bowers, No. CRIM.A 04-133 JJF, 2005 WL 1979142, at *3 (D.Del. Aug, 15, 2005).

16. In Bowers, the court summarized the Supreme Court's reasonable suspicion standard, and explained:

> Generally, for a suspicion to be reasonable, an officer must be able to articulate specific facts that support the suspicion, and thus, justify the intrusion. 'Anything less would invite intrusion upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches.' In evaluating whether a particular search was reasonable, 'it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure 'warrant a man of reasonable caution in the belief that the action taken was appropriate?"

Id. at *4 (citations omitted).

17. In this case, the officers did not have reasonable suspicion to conduct the administrative search of Mr. Cottman's home. The officers had no information indicating that Mr. Cottman was involved in any new illegal criminal activity. Instead, the officers, after learning Mr. Cottman's true identity, discovered that he had violated probation and had two capiases for family court violations. This information alone does not support the administrative search for suspicion of criminal behavior, and thus, is a violation of Mr. Cottman's Fourth Amendment rights.

18. Mr. Cottman also submits that any alleged statements made during, or subsequent to,

his illegal search and seizure should be suppressed pursuant to the Fifth Amendment and Miranda v. Washington, 384 U.S. 436, 444 (1966) (stating that a suspect subjected to custodial interrogation must be advised of his rights prior to making a statement); see also Wong Sun, 371 U.S. 471 (stating that evidence from an illegal search must be suppressed in accordance with the "fruit of the poisonous tree doctrine").

19. Mr. Cottman reserves the right to file a Memorandum of Law in support of his Motion to Suppress Physical Evidence and Statements after the completion of a hearing in this matter.

**WHEREFORE**, Mr. Cottman respectfully submits that this Court conduct a hearing to further develop the facts related to this motion and enter an Order suppressing the Government's use of any and all evidence illegally seized by law enforcement officials on or about February 18, 2007, including all statements made subsequent to the illegal search.

                                    Respectfully Submitted,

                                    /s/
                                  EDSON A. BOSTIC
                                  Federal Public Defender

                                  TIEFFA N. HARPER
                                  Research & Writing Attorney

                                  Attorneys for Robert Cottman

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE
ONE CUSTOMS HOUSE
704 KING STREET, SUITE 110
WILMINGTON, DE 19801
(302) 573-6010

Dated: May 25, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 07-25-JJF |
| ROBERT COTTMAN | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this ____ day of _____, 2007, upon consideration of the Defendant's Amended Motion to Suppress Physical Evidence and Statements, and the Government's response thereto, it is hereby ORDERED that the Motion is GRANTED.

All physical evidence seized by the Wilmington Police Department and Delaware State Probation and Parole on February 18, 2007, and statements made by the Defendant to law enforcement officials on February 18, 2007, are hereby **SUPPRESSED**. Such physical evidence and statements shall be inadmissible, for any purpose, by the Government.

BY THE COURT:

_____
Honorable Joseph J. Farnan, Jr.
United States District Court Judge